New Jersey Lawyers and Bankers Conference Committee.

IN THE MATTER OF THE CALDWELL NATIONAL BANK.

Approved June 9, 1939.

Conclusions.

The complaint in this matter was filed by John A. Bolger, Esquire, a member of the Bar of the State of New Jersey, with offices located in Newark, New Jersey, and deals with the retention by the Caldwell National Bank as executor of the last will and testament of Stephen J. Speer, deceased, of an attorney as proctor for the estate, other than the attorney who prepared the will. It was served upon the defendant bank, but no formal answer was made, although the Bank in a letter addressed to the Secretary of the Committee, generally denied any infraction of the principles applicable to corporate fiduciaries and refused to submit itself to the jurisdiction of the Committee. However, its Vice-President, F. T. Cramer, appeared at the hearing, although unofficially according to the aforesaid letter, and offered himself as a witness in connection with the transaction which was the subject-matter of the complaint.

The Statement of Principles applicable to corporate fiduciaries and members of the Bar has been approved and adopted by the New Jersey State Bar Association, by the Conference of County Bar Associations, and by the New Jersey Bankers Association, of which the Caldwell National Bank was and still is a member. Its action, therefore, in refusing to submit itself to the jurisdiction of the Committee

in this case can only be construed to be a repudiation of its obligation to the Bankers Association. Such action cannot be too highly censured, in our opinion, not only because the Bank failed to perform its obligation to the Bankers Association, but also because such action contravenes the underlying motives which were responsible for the compilation and adoption of these principles by the Banks and the Bar of this State.

The hearing in this matter disclosed that the complainant, Mr. Bolger, sometime during July of 1934, was retained by Stephen J. Speer, who was then the President of the Caldwell National Bank, to prepare his last will and testament; that Mr. Bolger prepared such a will, in which the Caldwell National Bank was named as executor and trustee; and that Mr. Speer then executed the will and subsequently died on December 14th, 1938.

It was also disclosed at the hearing that on December 19th, 1938, five days after Mr. Speer's death, Mr. Bolger wrote to the Bank advising them that he had prepared the decedent's will in which the Bank had been named as executor and trustee; that on December 20th, 1938, the Bank acknowledged this letter by a letter which was signed by F. T. Cramer, Vice-President, and in which it was stated that the decedent's son, Richard S. Speer, had requested the Bank to retain John A. Booth, Esquire, a member of the Bar of the State of New Jersey, with offices located in Newark, New Jersey, as proctor for the estate, because he had also been retained as proctor of the estate of Mr. Speer's wife, who had died about two weeks prior to his death, leaving a will which had been prepared by Willard S. Muchmore, Esquire, Newark, New Jersey, and which had been admitted to probate; that on December 27th, 1938, Mr. Speer's will was admitted to probate by the surrogate of Essex county, Mr. Booth appearing as proctor for the Bank, which qualified as executor and trustee of the decedent's estate; and that on January 3d, 1939, Mr. Bolger again wrote a letter to the Bank.

In this letter Mr. Bolger again stated that he had prepared the decedent's will and told them that he had represented the

decedent in other matters, the last one of which was as late as October of 1938, less than two months prior to the decedent's death. He also called their attention in this letter to section 10 (a) of the Statement of Principles applicable to corporate fiduciaries and members of the Bar, and to the approval of these principles by both the New Jersey Bankers Association and the New Jersey State Bar Association. He further stated in this letter that it was agreeable to him to have Mr. Booth act as associate counsel with him as provided for in this section of the Principles. On the same date he also wrote to Mr. Booth to the same effect. No reply was received from the Bank, although Mr. Booth wrote to him on January 6th, 1939, telling him that he had been appointed proctor at the request of the decedent's son, Richard S. Speer, and that such a request, in his opinion, constituted "good reasons to the contrary" as set forth in section 10 (a) of the Statement of Principles. The said section 10 (a) reads as follows:

"a corporate fiduciary shall, in the absence of good reasons to the contrary, employ the attorney who drew the will, in legal matters affecting or arising out of the administration of the estate, trusteeship or guardianship under the will, but nothing in this paragraph contained shall prohibit the corporate fiduciary from employing or retaining associate counsel if the necessity therefor exists."

It was also shown at the hearing that on January 4th, 1939, the day following the receipt of Mr. Bolger's letter calling his attention to section 10 (a) of the Statement of Principles, Mr. Cramer, Vice-President of the Bank, wrote to the Secretary of this Committee requesting a copy of the Statement of Principles applicable to corporate fiduciaries be sent to him. It was further shown that shortly after the death of the decedent's widow, Mr. Muchmore, who had prepared the will, also received a letter from the Bank in which it was stated that the decedent's son, Richard S. Speer, had requested the Bank to retain John A. Booth, Esquire, as proctor for the estate *because of his prior retention as proctor of the estate of Mr. Speer.*

The hearing also disclosed that Mr. Bolger was thirty-one years of age and had been admitted to the Bar in April of 1930; that he had represented the decedent on three prior occasions, two of them in connection with the collection of accounts receivable for the decedent's coal business and one of them in connection with the preparation of a bond of indemnity, the latter occasion being about a month prior to the decedent's death; that he had known the decedent's family since childhood; that the decedent had stated to him at the time he requested him to prepare his will, that he did not want his family to know about it; that since his admission to the Bar he has represented fiduciaries in connection with the settlement of over thirty estates, two of which were approximately the size of the decedent's estate.

An examination of Mr. Bolger by the various members of the Committee was extremely satisfactory in that he unhesitatingly, fully and completely answered all questions in a clear, concise and direct manner. An examination of Mr. Cramer, however, was somewhat unsatisfactory in that he did not recall whether the executive committee of the Bank had discussed the application of section 10 (a) of the Statement of Principles prior to the request for Mr. Booth's retention; and also in that he was not at all clear as to whether the Bank had a copy of the Statement of Principles prior to the time he wrote for such copy immediately following the receipt of Mr. Bolger's letter calling his attention to it. His testimony leaves considerable doubt in the minds of the Committee as to whether the Bank actually did have in its possession a copy of this Statement of Principles and, therefore, did examine it prior to its agreement to retain Mr. Booth as proctor for the estate. In fact, the only part of Mr. Cramer's testimony which was entirely clear was to the effect that the decedent's son had requested the retention of Mr. Booth; that he, the son, knew about the will and the designation of the Bank as executor; and that Mr. Cramer had discussed the Statement of Principles with the President of the Bank, although as to whether this discussion occurred prior to the receipt of the Statement of Principles from the Secretary of the Committee, or subsequent thereto, was not at all clear.

The question raised by this complaint is not new to the Committee in that a similar question was presented to it on June 18th, 1937, in the case entitled "In the Matter of the Howard Savings Institution." The facts in that case were that the beneficiaries of a decedent's estate had requested the Savings Institution to retain an attorney as proctor for the estate other than the attorney who had prepared the will; that the Savings Institution refused to do this and retained the services of the attorney who had prepared the will; that the attorney selected by the beneficiaries thereupon filed a complaint with the Committee on the ground that the request of the beneficiaries constituted in itself a "good and sufficient reason" within the meaning of that clause as contained in section 10 (a) of the Statement of Principles. The Committee, in dismissing the complaint, said: "* * * the provisions of the paragraph were so worded that the bank might, if good reason appeared, appoint the attorney for the residuary legatees instead of the attorney who drew the will, but * * * in the first instance the Bank should give consideration to the appointment of the attorney who drew the will."

There is, quite apparently, a disposition on the part of some corporate fiduciaries and some members of the Bar to examine these principles and if the act complained of is not explicitly proscribed, to proceed to follow the line of least resistance which, in this case, was to comply with the beneficiary's request. It may be good business for a bank to acquiesce in a beneficiary's request of this nature, but such request by itself, most assuredly cannot be said to be a "good and sufficient reason." In this connection there must not be lost sight of the fact that there may be a conflict between the desires of a beneficiary or beneficiaries of an estate, on the one hand, and the desires and intention of the testator as expressed by his will, on the other; and that the testator may have had this thought in mind when he selected his attorney to draw his will. Indeed such may have been the situation in the instant case, because the testator told Mr. Bolger that he did not want his family to know about the will. In any

event, the fact that a testator has selected an attorney to prepare his will should not be lightly cast aside by an executor in considering the appointment of a proctor for the testator's estate.

The spirit of the Statement of Principles, as indicated by the discussion of the original Committee who compiled them, was that there should be co-operation between the members of the Bar, on the one hand, and the members of the Bankers Association, on the other hand, to the end that the members of the Bar would recommend to their clients the appointment of corporate fiduciaries in their wills, and the members of the Bankers Association would appoint the attorney who drew the will as proctor instead of their own counsel. With respect to this particular section, these minutes clearly show that the phrase "in the absence of good reasons to the contrary" was not in the original draft, but was added to avoid the necessity of employing an incompetent or inexperienced lawyer to represent a Bank as proctor of an estate. At the same time there was also added to this section, the provision for the appointment of associate counsel. This was done, as these minutes show, for the express purpose of avoiding the necessity for appointing an attorney as proctor other than the attorney who drew the will, because of the latter's inexperience.

The evidence presented at the hearing was not sufficient for the Committee to determine whether Mr. Booth, who was retained by the Bank as counsel for the decedent's estate, was acquainted with all the facts and circumstances relating to this matter; and even if he were acquainted with such facts and circumstances, the Committee would not be in a position to make any pronouncement with respect to his conduct because he was not a party to the proceedings. It does, however, desire to express its views with respect to such a course of conduct, as it considers that if an attorney accepts an appointment as proctor for a decedent's estate, in a case where the facts and circumstances are similar to those which have been found to exist in this case, and has full knowledge of such facts and circumstances, then his conduct in accepting such an appointment was improper.

With these facts before us, the Committee must and does find:

1. That under paragraph 10 (a) of the Statement of Principles, it is not a "good and sufficient reason" to employ an attorney other than the one who drew the will, simply because a beneficiary or other person interested under the will, requested it.

2. That the Caldwell National Bank has violated the provisions of paragraph 10 (a) of the Statement of Principles.

Unanimously approved by the committee, June 9th, 1939.